UNITED STATESS BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS


In re                                    Chapter 7

U. S. Auto Exchange Group, LTD.          Case No. 02-10310-RS
        Debtor


TRUSTEE'S OBJECTION TO CLAIMS
RE: Claim Numbers 12 and 16


   John O. Desmond, Trustee, objects to the following claims for the reasons set forth below:

Creditor                                 Amount
Claim No. 12
General Electric Capital Auto Lease      $57, 331.91 Secured
c/o David M. Banash, Esq.
375 Totten Pond Road #102
Waltham, MA 02451-2010


Reason for Objection

   The claim is filed as a secured claim based on two automobile leases. The automobiles have not been administered by the trustee. It appears from the documentation attached to the claim that Vehicle A has not been liquidated by the creditor. The trustee believes that the claim should only be allowed as an unsecured claim without priority for any amount that is due on the lease after collateral has been liquidated. The trustee has no objection to the claim being allowed as an unsecured claim without priority in the amount of $17,420.06 which is the amount due on Vehicle B.


Proposed Disposition

   If the Creditor does not respond to this objection within the deadline to be set by the Court, the claim shall be allowed as a general unsecured claim in the amount of $17,420.06.

| Creditor | Amount |
|---|---|
| Claim No. 16 | $22,958.83 Secured |
| C.R. Hogen | |
| c/o Jonathan M. Feigenbaum, Esq. | |
| Phillips & Angley | |
| One Bowdoin Square | |
| Boston, MA 02114 | |

Reason for Objection

      The claim is filed as a secured claim based on an execution issued by the Suffolk Superior Court.  The trustee believes that the creditor does not have a lien on any of the assets that were liquidated by the trustee, and that the claim should be allowed as an unsecured claim without priority.

Proposed Disposition

      If the Creditor does not respond to this objection within the deadline to be set by the Court, the claim shall be allowed as a general unsecured claim without priority.

Dated:   February 19, 2007

/s/ John O. Desmond
_____
John O. Desmond (BBO 554580)
Trustee
24 Union Avenue
Framingham, MA 01702
Tel:  (508) 879-9638
Email:  trustee@jdesmond.com

CERTIFICATE OF SERVICE

February 19, 2007

      I, John O. Desmond, certify under the pains and penalties of perjury that on this date, true and correct copies of the foregoing TRUSTEE'S OBJECTION TO CLAIMS RE: Claim Numbers 12 and 16 were served via the U.S. Bankruptcy Court's CM/ECF filing system or by U.S. Mail, First Class, postage pre-paid, to those persons not appearing on the Court's receipt of electronic filing:

United States Trustee
1184 O'Neill Federal Building
10 Causeway Street
Boston, MA 02222-1043

| | |
|---|---|
| Donald F. Farrell, Jr., Esq.<br>Anderson Aquino LLP<br>260 Franklin Street<br>Boston, MA 02110 | Attorney for Debtor |
| Mark G. DeGiacomo, Esq.<br>Murtha Cullina<br>99 High Street<br>Boston, MA 02110 | Attorney for Trustee |
| James S. Singer, Esq.<br>Gargill, Sassoon & Rudolph LLP<br>92 State Street<br>Boston, MA 02109 | Attorney for Brighton Ave. Associates |
| George Nader, Esq.<br>Zimble & Brettler<br>21 Custom House Street<br>Boston, MA 02110 | Attorney for All County Storage |
| Lawrence G. Green, Esq.<br>Perkins, Smith & Cohen LLP<br>One Beacon Street, 30th Floor<br>Boston, MA 02108 | Attorney for Mechanics Co-op |
| Tracy Ingle, Esq.<br>77 Turnpike Road<br>Southboro, MA 01772 | Attorney for Automotive Financing |

| | |
|---|---|
| Robert L. Martin, Esq.<br>150 Charles Street<br>Boston, MA 02114 | Attorney for Hadrien Fraissinet |
| David J. Reier, Esq.<br>Seyfarth Shaw<br>Two Seaport Lane<br>Boston, MA 02210 | Attorney for All County Storage |
| Herbert Weinberg, Esq.<br>805 Turnpike Street, Suite 201<br>North Andover, MA 01845 | Attorney for Seth Stadfeld |

General Electric Capital Auto Lease
c/o David M. Banash, Esq.
375 Totten Pond Road #102
Waltham, MA 02451-2010

C.R. Hogen
c/o Jonathan M. Feigenbaum, Esq.
Phillips & Angley
One Bowdoin Square
Boston, MA 02114


/s/ John O. Desmond
_____
John O. Desmond

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT  DISTRICT OF Massachusetts | PROOF OF CLAIM |
|---|---|

| Name of Debtor: US Auto Exchange Group, Ltd. | Case Number: 02-10310 CJK |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

General Electric Capital Auto Lease, Inc.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
David M. Banash, Esq.
David M. Banash, P.C.
375 Totten Pond Rd., #102
Waltham, MA. 02451-2010
Telephone number: 781-290-5855

☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
08303028058; 08303087105

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
☒ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Your SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)        (date)

**2. Date debt was incurred:** 4/24/00

**3. If court judgment, date obtained:** _____

**4. Total Amount of Claim at Time Case Filed:** $ 57,331.91

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. See Exhibit "A"

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☒ Motor Vehicle
☐ Other _____
Value of Collateral: $ 33,474.00

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 10,934.68

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. See Exh. "B"

**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

#12

Date: May 13, 2002

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
General Electric Capital Auto Lease, Inc.
by: Steven Reuther, its duly authorized manager

Penalty for presenting fraudulent claim: fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                    )
                                          )
                                          )    CHAPTER 7
US AUTO EXCHANGE GROUP, LTD.              )    CASE # 02-10310 CJK

EXHIBIT "A"

TO

PROOF OF CLAIM OF GENERAL ELECTRIC CAPITAL AUTO LEASE, INC.

A. Account 08303028058

| | | |
|---|---|---:|
| 1. | base claim | $ 35,247.85 |
| 2. | interest from 6/8/01 (date of demand) to 1/16/02, date of bankruptcy,@ statutory rate of 12% per annum | 2,467.50 |
| 3. | attorney's fees as of 1/16/02 | 2,196.50 |
| | total | 39,991.85 |

B. Account 08303087105

| | | |
|---|---|---:|
| 1. | base claim | 57,002.47 |
| 2. | interest from 6/8/01 to 1/16/02 | 3,990.18 |
| 3. | attorney's fees as of 1/16/02 | 2,280.50 |
| 4. | less net sales proceeds | 45,853.09 |
| | total | 17,420.06 |
| | Grand total | $ 57,331.91 |

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

IN RE: )
)
) CHAPTER 7
US AUTO EXCHANGE GROUP, LTD. ) CASE # 02-10310 CJK

## EXHIBIT "B"

## TO

## PROOF OF CLAIM OF GENERAL ELECTRIC CAPITAL AUTO LEASE, INC.

Invoice, attached
Dealer Retail Agreement, attached




# Customized Auto Credit Services, Inc.

## Dealer Retail Agreement

THIS RETAIL AGREEMENT between Customized Auto Credit Services, Inc., a Delaware corporation ("Customized Auto"), and the undersigned dealer ("Dealer").

1. **ENTIRE AGREEMENT.** This Agreement is the entire agreement between Customized Auto and Dealer regarding the purchase by Customized Auto from Dealer of Contracts and Vehicles as defined below. The term "Customized Auto" as used in this Agreement refers to both Customized Auto Credit Services, Inc. and General Electric Capital Corporation, an affiliate of Customized Auto Credit Services, Inc. Section headings are included in this Agreement for reference only and do not affect the interpretation of this Agreement.

2. **DEFINITIONS.** As used herein:
   A. "Agreement" means this Dealer Retail Agreement as may be amended from time to time in accordance with Section 23 hereof.
   B. "Buyer(s)" means any person(s), including any co-Buyer(s) or guarantor(s), who enter into a Contract with Dealer for the purchase of a Vehicle.
   C. "Contract" means a retail installment sale contract, conditional sale contract, or other document providing for the payment by Buyer(s) to Dealer of funds in connection with a retail credit sale of a new or used motor vehicle owned by Dealer to Buyer(s); and
   D. "Vehicle" means the new or used motor vehicle owned by Dealer which is the subject of a Contract.

3. **SALE AND PURCHASE OF CONTRACTS.**
   A. Contract Documentation and Sale. If Dealer wishes Customized Auto to purchase a Contract hereunder, Dealer shall furnish Customized Auto with: (i) the transaction's proposed term, (ii) any credit information Dealer has regarding Buyer(s), and (iii) such other information as Customized Auto shall request. Upon receipt of all required documentation, Customized Auto will decide in its sole discretion whether it will purchase a Contract. Customized Auto will give Dealer an approval number for each approved transaction. Upon receipt of such approval number, Dealer shall procure all documents as are requested by Customized Auto, including but not limited to evidence of physical damage insurance covering the Vehicle as required by Customized Auto. Upon receipt by Dealer of the documents requested by Customized Auto, each properly executed by Buyer(s) and approved by Dealer, Dealer shall execute those documents required to be executed by the seller and shall thereafter deliver the Vehicle to Buyer(s). Following such execution and subsequent delivery of the Vehicle, Dealer shall promptly forward to Customized Auto the Contract and other documentation required by Customized Auto after which Customized Auto may purchase the Contract in accordance with Section 3(B).
   B. Purchase Price and Payment. Customized Auto will purchase a Contract and pay to Dealer such price as Customized Auto shall from time to time establish for the purchase of Contracts, so long as Dealer provides to Customized Auto documentation required by, and in a form satisfactory to, Customized Auto within thirty (30) days of Customized Auto's issuance of an approval number for the transaction. Nothing in this Agreement shall be construed to obligate Dealer to sell Contracts to Customized Auto or to obligate Customized Auto to purchase Contracts from Dealer.

4. **PERFECTION OF SECURITY INTEREST.** For every Contract purchased by Customized Auto, Dealer will file and record all documents necessary to perfect the valid and enforceable first priority security interest of Customized Auto in the Vehicle and will send Customized Auto the filing receipts. In states where security interests are noted on certificates of title or registration, Dealer will complete the necessary forms and documents and forward them, together with the appropriate fees, to those public officials who are responsible for issuing the certificate of title or registration and will send Customized Auto evidence that Customized Auto's security interest is noted on the certificate of title or registration.

5. **MECHANICAL BREAKDOWN PROTECTION CONTRACTS AND CREDIT INSURANCE.**
   A. Acceptability of MBP Contract and Credit Insurance. Customized Auto will finance a mechanical breakdown protection contract ("MBP Contract") covering the Vehicle or Credit Insurance Policy including credit life insurance and/or accident or health insurance ("Credit Insurance Policy") sold by Dealer subject to the acceptability to Customized Auto of the form, administrator, if any, and underwriter of the MBP Contract or Credit Insurance Policy.
   B. Cancellation of MBP Contract or Credit Insurance. If an acceptable MBP Contract or Credit Insurance Policy is sold to Buyer(s) and financed as part of the Contract, Dealer agrees that the MBP Contract or the Credit Insurance Policy shall be cancelable upon the demand of Buyer(s), in which case Dealer shall immediately notify Customized Auto thereof), or Customized Auto, or by operation of law. In the event of any such cancellation, Buyer(s) shall be entitled to a refund of the unearned portion of the cash price as provided in the MBP Contract, or Credit Insurance Policy or Contract, or as otherwise required by law, whichever provides for the greatest refund of credit. As between Customized Auto and Dealer, Dealer's liability under this paragraph shall be limited to that amount Dealer collected and retained or otherwise received in connection with the sale of the MBP Contract or the Credit Insurance Policy which is determined by the foregoing standards to be subject to refund. Dealer shall remit its portion of the refund to Buyer(s), Customized Auto or appropriate third party within fifteen (15) days of cancellation as directed by Customized Auto. Such refund may, if so provided in the Contract, be subject to a security interest of Customized Auto therein.

6. **BOOKS, RECORDS AND FINANCIAL STATEMENTS.** Dealer shall maintain complete and accurate records concerning the sale to Customized Auto of each Contract and underlying Vehicle, and all other transactions affecting the Vehicle. Customized Auto may at any time upon reasonable notice inspect Dealer's records. Dealer will furnish Customized Auto with financial statements periodically as part of Customized Auto Dealer review procedure.

7. **PAYMENTS FROM BUYER(S).** Should any payment be made to Dealer under a Contract sold to Customized Auto, Dealer will receive such payment in trust and will remit same to Customized Auto immediately in the form received for credit to such Contract.

8. **POWER OF ATTORNEY.** Dealer authorizes Customized Auto to sign and endorse Dealer's name upon any checks, drafts, money orders or other forms of payment that may come into Customized Auto's possession as payment of or on account of any Contract. Dealer authorizes Customized Auto to sign its name to any assignment of any Contract to Customized Auto and to sign and endorse Dealer's name on any other instrument necessary to carry out the intent of this Agreement. This Power of Attorney shall be irrevocable and shall remain in effect for so long as there are Contracts outstanding which have been purchased pursuant to this Agreement.

9. **DEALER'S GENERAL WARRANTIES.** So long as this Agreement is in effect, Dealer warrants and agrees that:
   A. If it is a corporation, it is and will remain in good standing in the state of its incorporation and it has obtained the necessary resolution of its Board of Directors and, if required, the necessary shareholders' ratification of the making of this Agreement.
   B. At the time Dealer enters into a Contract which is subsequently sold to Customized Auto, Dealer is properly licensed to sell motor vehicles in the state(s) where Dealer conducts its business.
   C. If Dealer conducts business under a fictitious trade name or as a partnership, it is and will remain in compliance with all applicable laws relating to conducting business under a fictitious trade name or as a partnership.
   D. It shall not represent that it is the agent of Customized Auto.
   E. All financial statements of Dealer and other material information supplied by Dealer to Customized Auto are and will be true, complete and accurate.

10. **DEALER'S SPECIFIC WARRANTIES AS TO EACH CONTRACT.** With respect to each Contract purchased by Customized Auto:
    A. The Contract evidences a transaction that is the direct result of a genuine and bona fide sale made by Dealer and not by a third party, and there are no other agreements between Dealer and Buyer(s), except under a MBP Contract or Credit Insurance Policy.
    B. The down payment and any payment due under the Contract was made by the Buyer(s) in cash, unless otherwise specified on the Contract, and no part thereof was loaned directly or indirectly by Dealer to Buyer(s) or made by Dealer.
    C. Neither Dealer nor any of its employees has made any oral or written promise or representation not contained in writing evidencing the Contract and approved by Customized Auto.
    D. All business practices and operations of Dealer (including the sale of insurance or other coverages) and all Contracts and disclosures arising in connection with the sale of automobiles to Buyer(s) shall be in compliance with all applicable federal, state and local laws, regulations and ordinances included but not limited to the Fair Credit Reporting Act, the Equal Credit Opportunity Act and Regulation B, the Truth in Lending Act and Regulation Z and FTC rules and regulations.
    E. The Contract is owned by Dealer at the time of sale to Buyer(s), and is free and clear from all liens, set-offs or counterclaims, except as herein provided.
    F. The Contract and each guaranty and/or additional collateral agreement in connection therewith is a valid obligation entered into by bona fide and competent persons and is legally enforceable by Customized Auto as assignee against each purported signatory thereof.
    G. Any credit information supplied by Dealer as to the Buyer(s) is true, complete and accurate to the best of Dealer's information and belief.
    H. The amounts charged any Buyer(s) for any insurance coverage shall not be in excess of the amounts permitted by applicable law.
    I. Dealer has taken all action required by Sections 3(A) and 4.
    J. The Vehicle and all options therein are accurately described in the Contract and such Vehicle was delivered by Dealer and accepted by Buyer(s).



**VEHICLE INVOICE**

**U.S. AUTO EXCHANGE** (USAX)
1095 Commonwealth Ave.
BOSTON, MA 02215
Tel: (617) 787-3000  Fax (617) 783-1500

SOLD TO: GE CAPITAL AUTO LEASE INC.
ADDRESS: P.O. BOX 310
BARRINGTON, IL 60011-0310
DATE: 04/24/00
SALESMAN: BASIL

| YEAR | MAKE | MODEL | BODY STYLE | NEW OR USED | KEY NO. |
|---|---|---|---|---|---|
| 1998 | BMW | 740IL | SEDAN | USED | |

VIN: WBAGJ8328WDH11667

PRICE OF VEHICLE: 33474.00

INSURANCE COVERAGE INCLUDES:
- FIRE AND THEFT
- PUBLIC LIABILITY - AMT.
- COLLISION - AMT. DEDUCT.
- PROPERTY DAMAGE - AMT.

VEHICLE IN CUSTODY OF:

PETER J MARASHIO III AND BETH C MARASHIO
49 COMMONWEALTH CIRCLE
LEOMINSTER, MA 01453

NET CAP COST:        33399.00
RESIDUAL VALUE:      18829.00
TERM:                48 MONTHS
PAYMENT:             529.31
SEC. DEP.:           550.00
TITLE/REG.:          80.00
CASH DOWN:           495.00
TRADE ALLOW:         10600.00
TAXES & FEES         25.21
PAYMENT DUE AT SIGNING:  $ 12354.06

SALES TAX
DELIVERED PRICE    33474.00
EXTRAS:
  OPTIONAL EQUIP. & ACC.:
  FACTORY INSTALLED
  DEALER INSTALLED

SALES TAX
TOTAL CASH PRICE    33474.00
COST OF FINANCE
COST OF INSURANCE
TOTAL TIME PRICE    33474.00

SETTLEMENT
DEPOSIT
CASH ON DELIVERY
TRADE-IN
LESS LIEN

NAME OF FINANCE COMPANY: GE CAPITAL AUTO LEASE INC.

TOTAL    33474.00




**11. DEALER LIABILITY.**

A. Repurchase. If a Dealer representation, warranty or covenant made in the assignment of a Contract to Customized Auto is breached, or is untrue, or if Dealer fails to perform any of its obligations to Customized Auto hereunder or otherwise, or if Dealer breaches any of its warranties under this Agreement, then Dealer shall promptly pay Customized Auto, upon receipt of Customized Auto's demand, one or more of the following amounts at the election of Customized Auto: (1) the unpaid balance, as determined by Customized Auto, of any or all Contracts purchased hereunder, less any unearned finance charges and any discounts in connection with such Contracts; (2) all losses and expenses incurred by Customized Auto as a result of such breach, or untruth, or failure to perform, including attorney's fees; and (3) out-of-pocket expenses paid or incurred by Customized Auto in connection with the collection of any amount due under any such Contract, including attorney's fees and costs of litigation, whether by or against Customized Auto, and expenses with respect to repossessing, storing, repairing and selling the Vehicle. If Dealer fails to repurchase any Contracts as required by this Section 11, Customized Auto may at its option (i) allow the Contracts to pay to maturity; or (ii) upon ten (10) days written notice to Dealer, sell any and all Contracts purchased from Dealer at public or private sale. In either event, Customized Auto may apply the proceeds after deducting expenses and reasonable attorneys fees, to the payment of Dealer's obligations hereunder, and Dealer will be responsible for any deficiency.

B. Transfer of Contracts. Upon Dealer's payment of the amounts payable pursuant to Section 11(A), such Contract may be assigned and/or endorsed by Customized Auto to Dealer without recourse and without warranties of any kind and sent to Dealer. Dealer authorizes Customized Auto to prepare and to execute, for and on behalf of Dealer and in its name, any instrument which in Customized Auto's judgment is necessary to effectuate such transfer.

C. Failure to Repurchase. If Dealer fails to repurchase a Contract as required by Section 11, Customized Auto may, in mitigation of its damages, repossess the Vehicle securing the Contract, in which event Dealer will pay Customized Auto, in cash upon demand, in addition to any other sums provided for herein, all reasonable costs of repossession, including court costs and reasonable attorney's fees, and all costs of reconditioning, storing and reselling the Vehicle.

D. Right of Customized Auto on Breach. If Dealer breaches this Agreement in any respect, or any other agreement with Customized Auto relating to a Contract, Customized Auto shall have, in addition to all remedies provided in this agreement and at law, the right to immediately terminate this Agreement, and deem null and void any approvals issued for the purchase of Contracts for which Customized Auto has not paid the purchase price to Dealer. Customized Auto shall have no obligation to purchase from Dealer any Contracts subject to an approval which is deemed null and void pursuant to this Section 11(O).

E. Dealer Indemnity. Dealer shall indemnify, defend and hold Customized Auto harmless from any claims, losses, damages, liabilities and expenses, including attorney's fees and costs of litigation, which relate to a Contract purchased by Customized Auto and arise from Dealer's breach or default under this Agreement, Dealer's conduct, the failure of the transaction to comply with Dealer's warranties in Sections 9 or 10, or result from any act or omission on the part of Dealer.

**12. SETOFF.** Customized Auto may deduct from any obligation or funds due Dealer any amount Dealer owes Customized Auto. Any moneys, Contracts or any property of any nature or description which may come into the possession of Customized Auto may be held by Customized Auto and applied, at any time, to offset any amounts owing to Customized Auto.

**13. ADVERTISING.** Dealer agrees not to identify Customized Auto in any advertising placed in any medium (including signs on Dealer's premises) without prior written approval from Customized Auto.

**14. EXTENSION OR VARIATION OF CONTRACTS.** Dealer's liability hereunder shall not be affected by any settlement, extension, forbearance or variation in terms which Customized Auto may grant in connection with any Contract or by the discharge or release of the obligations of Buyer(s) or any other person thereunder by operation of law or otherwise.

**15. CONTRACT FORMS.** Customized Auto shall furnish Dealer with fill-in-the-blank retail installment contract forms for transactions to be submitted to Customized Auto. However, Dealer may use any contract form for which Customized Auto has given its prior approval. Customized Auto makes no representations or warranties of any kind, express or implied, relating to any form used to evidence a Contract.

**16. COLLECTION ON CONTRACTS.** Customized Auto shall have the sole right to make collections on all Contracts and Dealer shall not solicit or make any collections or repossessions with respect to any Contract sold to Customized Auto, nor accept the return of, nor make any substitution of, any of the subject matter of such Contracts. Dealer shall hold in trust and promptly forward to Customized Auto all communications and remittances received in reference to said Contract.

**17. WAIVER.** Dealer hereby waives any failure or delay on Customized Auto's part in asserting or enforcing any right which Customized Auto may have at any time hereunder. Dealer hereby expressly waives notice of acceptance of this Agreement, notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosures and possessory remedies all as may be permitted by applicable law.

**18. DEALER NOT AN AGENT.** This Agreement and any action pursuant hereto does not make Dealer the agent or representative of Customized Auto for any purpose. Dealer is not granted any express or implied right to bind Customized Auto in any manner.

**19. TERM OF AGREEMENT.** This Agreement shall become effective upon its execution by Dealer and Customized Auto and shall continue in force until terminated by either party. This Agreement may be terminated at any time by either party by written notice to the other, but such termination shall in no way affect the obligations of the parties on Contracts theretofor acquired by Customized Auto, except that insofar as there may be an agreement provided for rate participation, such agreement will likewise be terminated.

**20. NOTICES.** Except as expressly permitted in this Agreement, all notices required or permitted to be given hereunder shall be in writing and shall be effective upon personal delivery or deposit in the U.S. mail, postage prepaid and properly addressed. Each party shall promptly provide the other with notice of any change in address.

**21. BINDING AGREEMENT; NO ASSIGNMENT.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors and assigns; provided, however, that Dealer shall not assign this agreement or any rights hereunder by operation of law or otherwise without Customized Auto's prior written consent.

**22. CREDIT INVESTIGATION.** Dealer authorizes Customized Auto to investigate Dealers credit worthiness and credit capacity as may in Customized Auto's discretion be necessary from time to time.

**23. AMENDMENTS.** This Agreement shall be amended either by a separate writing which is dated and executed both by Customized Auto and Dealer, or by a separate writing which is forwarded to and received by Dealer from Customized Auto, in which case the amendments contained therein shall be deemed accepted without qualification by Dealer upon the issuance pursuant to Dealer's request of the first Contract approval number by Customized Auto following the receipt of such writing.

**24. REMEDIES.** Customized Auto's rights hereunder are cumulative and not exclusive and any rights available to Customized Auto pursuant to the Uniform Commercial Code or any other remedy at law or equity may be exercised by Customized Auto and any failure by Customized Auto to exercise its rights hereunder shall not operate as a waiver of such rights.

**25. APPLICABLE LAW.** This Agreement shall be interpreted pursuant to the laws of the State of Illinois. Should any part of this Agreement be determined to be unenforceable by a court, such enforceability shall not affect the rest of this Agreement.

Executed on ____7/14____, 19__98__

Federal Tax I.D. No. _04-3240279_

Accepted:
Customized Auto Credit Services, Inc.

By: _____

Title: __Mgr Support Services__
800 Hart Road, Barrington, IL 60010

_U.S. AUTO EXCHANGE GROUP LTD._
(Print Dealership Legal Name)

By: _____ per
                    Title
By: __BAHIG F. BISHAY__, __PRESIDENT__
                                  Title
Street Address _1095 COMMONWEALTH AVE._

City _BOSTON_    State _MA_    Zip _02215_

FORM B10 (Official Form 10)(4/01)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS (BOSTON) | PROOF OF CLAIM |
|---|---|

| Name of Debtor: U.S. Auto Exchange Group | Case Number: 02-10310 cjk |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Hogen

Name and Address where notices should be sent:
~~Box~~ C.R. Hogen
~~c/o Christopher Tolley, E.~~ c/o
One Bowdoin Square    Jonathan M. Feigenbaum
Boston, MA 02114    Phillips & Angley
    One Bowdoin Square
    Boston, MA 02114
Telephone Number: 617-367-8787

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY
02-10310
4302649

Account or other number by which creditor identifies debtor:

Check here if ☐ replaces ☐ amends  a previously filed claim, dated _____
this claim

1. Basis for Claim
   ☒ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other _____

   ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Your SS #: ___ ___ ___
   Unpaid compensation for services performed
   from _____ to _____
   (date)    (date)

2. Date debt was incurred:

3. If court judgment, date obtained: 10/24/2000 see attached

4. Total Amount of Claim at Time Case Filed: $22,958.83
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Secured Claim.
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☒ Other  Judgment Creditor
   Value of Collateral:  $_____

   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. Unsecured Priority Claim.
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
   ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

   *Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY
#16

| Date 4/30/02 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): [signature] atty for C.R. Hog—
Jonathan M. Feigenbaum, Attorney for C.R. Hogen |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

015379

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## DEFINITIONS

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim*.)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims*.

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**7. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**8. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

015379   12313015410027

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
FOR CIVIL BUSINESS

To the Sheriffs of our Several Counties, or their Deputies, ~~or to any Constable of our City of Boston,~~

GREETING:

WHEREAS C. R. HOGEN,

~~of Boston, within our County of Suffolk,~~

by the consideration of our Justices of our Superior Court, holden at Boston, for and within our County of Suffolk, aforesaid, to wit, on the twenty-fourth day of October A.D. 2000, recovered judgment against U.S. AUTO EXCHANGE GROUP, LTD.,

Civil Action No. 00-3799

~~of said Boston,~~

$29,302.78

for the sum of — — — twenty-nine thousand three hundred two — — — dollars and — — seventy-eight — cents, damages, and — — one hundred twenty-four — — dollars

124.75

and — — seventy-five — — cents, costs of suit, as to us appears of record, whereof execution remains to be done on this, the first execution:

$29,427.53

*Interest after Judgment in the sum of $377.62 included in Writ of Execution
Rule 54(F)

We command you, therefore, that of the goods, chattels, or lands of the said judgment debtor, within your precinct, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof in money, the aforesaid sums, being — 29,427 — dollars and — 53 — cents, in the whole, with interest thereon from said day of the ~~rendition of said judgment~~ issuance of execution, and thereof also to satisfy yourself for your own fees; ~~and for want of goods, chattels, or lands of the~~ said judgment debtor to be by shown unto you, or found within your precinct to the acceptance of the said judgment creditor to satisfy the ~~sums~~ aforesaid with interest as aforesaid we command you to take the *bod*~~y of the~~ said judgment debtor, and commit unto our jail in Boston, in ~~our~~ County of Suffolk, or any jail in your precinct aforesaid, and detain in ~~your custody~~ within our jail, until pay the full sums above mentioned with your ~~fees, or that    be discharged by the said judgment creditor, or otherwise, by order of law.~~

Hereof fail not, and make return of this writ with your doings thereon into the clerk's office of our said Court, at Boston within our County of Suffolk, within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the fourth day of December, in the year of our Lord two thousand

Clerk/Magistrate